UNITED STATES of America, Appellee,

v.

Michael A. KAKLEY, Defendant,
Appellant.

No. 83–1490.

United States Court of Appeals,
First Circuit.

Argued June 8, 1984.

Decided July 10, 1984.

Certiorari Denied Oct. 9, 1984.
See 105 S.Ct. 261.

**2** ▉▉▉▉▉▉▉▉▉▉

Francis C. Newton, Jr., Boston, Mass., by appointment of the Court, for defendant, appellant.

Gary S. Katzmann, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., and Matthew J. Murphy III, Asst. U.S. Atty., Buffalo, N.Y., were on brief, for appellee.

Before CAMPBELL, Chief Judge, STEWART,* Associate Justice (Retired), and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Michael Kakley and Herman Brown were named in a five-count indictment charging them with conspiracy to commit wire fraud and with using interstate telephone facilities to further an arson scheme. After a jury trial in the United States District Court for the District of Massachusetts, both defendants were convicted. Kakley appeals, alleging three errors in the jury charge. We affirm.

The evidence adduced at trial, viewed in the light most favorable to the government, *United States v. Mora*, 598 F.2d 682, 683 (1st Cir.1979), revealed the following facts. In early 1982 Kakley, who was living in Phoenix, Arizona, and working as a jewelry broker, made the acquaintance of one Thomas Richards. In April, 1982, Kakley mentioned that he planned to have his house in Springfield, Massachusetts, torched by his friend Brown in order to collect the insurance proceeds. Richards, as Kakley already knew, had previous experience with arson, and he offered to burn Kakley's house himself; Kakley agreed, and a $1,000 fee was set. Richards, as Kakley did not know, also had previous experience as an FBI informant; he drove east, stopping in Buffalo, New York, on April 23, 1982, to report the arson scheme to his FBI contact there.

While in Buffalo, Richards telephoned Kakley in Phoenix on April 23 to confirm that Brown would be ready to provide the necessary materials and show Richards the way to the house in Springfield. Richards also telephoned Brown the same day to confirm these plans.[1] On April 28, 1982, Richards again telephoned Kakley, who complained that he was short of money, but assured Richards that his insurance was paid up and reminded Richards to "open the windows" and "let the air out" because it would be "easier that way." Richards told Kakley he intended to "be 20 minutes away when the whole thing blows up." Richards then called Brown to confirm that containers for the gasoline had been purchased.

On April 29, 1982, Richards, accompanied by an undercover FBI agent, drove from Buffalo to Springfield; Brown met them, and drove them to see the house which was to be torched. The following morning, Brown gathered the necessary materials and returned to the house with Richards and the undercover agent. Brown dropped the other two off, and went to fetch gasoline, which he brought back some twenty minutes later. By prearrangement, police appeared promptly on the scene and arrested Brown on an outstanding warrant. After the arrest, Richards telephoned Kakley in Phoenix once more and told him that the police had interrupted the preparations; Richards remarked that he didn't "think it'd be a good idea ... to do it," and Kakley responded, "No, not now anyway." Kakley also said that he had been "spending the money already." Kakley was subsequently arrested in Arizona and brought to trial in Massachusetts.

On appeal, Kakley first claims that the jury instruction on conspiracy was flawed. The trial court, having properly instructed the jury on the elements of conspiracy, concluded the original charge as follows:

* Of the Supreme Court of the United States, sitting by designation.

1. All conversations between Richards and Kakley or Brown were tape recorded with Richards's consent, and the recordings were introduced without objection at trial. Telephone company documents showed that Kakley and Brown also had telephone conversations with each other during this time, but they were not tape recorded.

[T]he indictment charges a conspiracy between the defendants Brown and Kakley. A person cannot conspire with himself, and therefore, you cannot find one defendant guilty and the other not guilty. For a conspiracy to be proved, both defendants must be found guilty for there is insufficient evidence of any other persons being involved in any alleged conspiracy.

This statement was entirely proper in light of the preceding instructions, which made it clear that an essential element of conspiracy is a knowing agreement between at least two people with specific intent to commit the underlying substantive offense, in this case, arson. The only third person with whom Kakley or Brown conceivably could have conspired to commit arson was Richards, but the prosecution's theory was never that Richard was a coconspirator and Richards testified without contradiction that he did not actually intend to burn the Springfield house at the time he left Phoenix. Nevertheless, Kakley's attorney took exception to "the requirement that both defendants must be found to have conspired together," and requested a substitute instruction, which the court gave as follows:

> [The defendants] could be found guilty of conspiring with known or unknown persons unknown to the Grand Jury so that it could be someone other than the named person. So, it is conceivable that you could find one defendant guilty of the conspiracy because you find him guilty with someone else other than the codefendant and then you would find the codefendant not guilty because you don't find him guilty of conspiring with anyone.

Kakley's and Brown's attorneys both indicated that they were satisfied with the substituted instruction after it was given, and raised no further objections.

■ We think it most unlikely that the jury even considered anyone except Brown as Kakley's coconspirator, especially where Brown was also convicted on each count charging him with using interstate tele-phone lines to further the arson scheme. We need not decide, however, what error, if any, was contained in the substituted instruction because Kakley's counsel not only failed to object to that instruction but affirmatively requested it in place of the original instruction. Whatever error may have occurred was "invited," and may not be raised on appeal. *See United States v. Gray*, 626 F.2d 494, 501 (5th Cir.1980), *cert. denied*, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981); *United States v. Riebold*, 557 F.2d 697, 708 (10th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *see also United States v. Mangieri*, 694 F.2d 1270, 1280 (D.C.Cir. 1982) ("especially reluctant to reverse for plain error when it is 'invited' ").

■ Kakley next contends that he was entitled to a jury instruction on entrapment. Such an instruction was requested by Brown's attorney, but the trial court was "not satisfied that there [was] sufficient evidence to instruct on the alleged defense of entrapment" and declined to give the instruction. Kakley's attorney neither requested an instruction nor objected to its omission; he is therefore barred from raising the issue on appeal unless there was plain error. *United States v. St. Germain*, 680 F.2d 874, 877 (1st Cir.1982); Fed.R.Crim.P. 30 & 52(b). "Entrapment occurs when the offense for which a defendant is being prosecuted was instigated by the law-enforcement officers and the defendant had no previous disposition to commit it." *United States v. Caron*, 588 F.2d 851, 851 n. 3 (1st Cir.1978). Before a defendant is entitled to have the jury consider the issue of entrapment, he must offer some evidence, amounting to more than a scintilla, that he lacked a predisposition to commit the offense. *United States v. Luce*, 726 F.2d 47, 49 (1st Cir.1984), *citing Kadis v. United States*, 373 F.2d 370, 374 (1st Cir.1967).

■ There is no evidence at all in the record indicating that the law enforcement officers involved in this case were even aware of Kakley's presence in Phoenix, let alone that they instigated the arson

**4**

scheme. Although Kakley testified that he was pressured into the arson scheme by the informant Richards, the evidence is at best unclear as to how and with whom the arson scheme was initiated. Conclusory and self-serving statements do not satisfy the defendant's burden of production. *Tzimopoulos v. United States*, 554 F.2d 1216, 1217 (1st Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). Indeed, despite Kakley's testimony that he took every "humanly possible" measure to prevent the torching of the Springfield house, there is no evidence indicating reluctance on his part either before or after he agreed to the arson scheme. The court's omission of an instruction on entrapment was not plain error.

Finally, Kakley contends that the jury should have been given a cautionary instruction concerning Richards's credibility as an informant. Again, Kakley's attorney neither requested such an instruction nor objected to its omission; the issue is foreclosed on appeal unless there was plain error. Although, as we have repeatedly emphasized, it is advisable to give a special credibility instruction in any case where the government relies on informant testimony, we have consistently held that it is not automatic error to omit an unrequested special credibility instruction where the informant's testimony, though uncorroborated, is credible and internally consistent. *United States v. Fortes*, 619 F.2d 108, 124 (1st Cir.1980); *United States v. Wright*, 573 F.2d 681, 685 (1st Cir.), *cert. denied*, 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *United States v. House*, 471 F.2d 886, 888 (1st Cir.1973). Richards's testimony was not only credible and internally consistent, but also substantially corroborated by the tape recorded conversations with Kakley and Brown and by the testimony of law enforcement agents. The case cited by Kakley, *United States v. Garcia*, 528 F.2d 580, 588 (5th Cir.), *cert. denied sub nom. Sandoval v. United States*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976), involving the "totally uncorroborated" testimony of a highly paid informant, is not in point. The failure to instruct the jury on informant credibility was not error.

We conclude that Kakley's contentions lack merit.

*The conviction is affirmed.*